**WOMACK, Plaintiff-Appellee, v. HOLLON et, Defendants-Appellants.**

Ohio Appeals, Fourth District, Scioto County.

No. 577.   Decided April 23, 1951.

466

Louis B. Bannon, Portsmouth, for plaintiff-appellee.

Thomas L. Conlan, Miller, Searl & Fitch, Portsmouth, for defendants-appellants.

(SKEEL, PJ, HURD, J, of the 8th District: DOYLE, J, of the 9th District sitting by designation.)

## OPINION

By SKEEL, PJ:

This appeal comes to this court on questions of law from a judgment entered upon the verdict of the jury in favor of the plaintiff.

The third amended petition of the plaintiff contains four counts. The first count, in effect, alleges that plaintiff, a resident of Texas, and sister of the defendant, Hollon, offered in writing, by a letter dated May 10, 1947, to sell to the plaintiff and her partner, Jack Kendrick, "The Chillicothe Franchise" to bottle and sell a soft drink known as "Dr. Pepper" in the Counties of Ross, Pike, Vinton, Jackson and Hocking, together with bottles, cases, bottling equipment and two trucks for about $28,000.00, which offer the plaintiff accepted on or about May 13, 1947.

Plaintiff further claims to have performed all the conditions by her to be performed but that the defendant has failed to transfer the bottles, cases, bottling machinery, franchise to the territory, and trucks as provided by the agreement; that she had a firm offer to sell said facilities for $37,500.00 which offer was referred to the defendant; that

defendant failed to transfer the property provided for in the agreement first above referred to, either to such prospective purchaser or to purchase such property back from plaintiff at such price. That the plaintiff received certain machinery from defendant of the reasonable value of $5000.00, but has also incurred liability and expended money within the contemplation of the parties because of defendant's wrongful refusal to perform his obligations under the contract to sell, in the sum of $4670.48.

The second cause of action sets forth the same allegations as to the written offer of May 10, 1947, to sell, accepted by the plaintiff, the breach by the defendant of his obligations thereunder, the receipt from another of a binding offer to buy out plaintiff's agreement with defendant for $37,500.00, and defendant's refusal to perform and the receipt of machinery valued at $5000.00 together with the incurring of a liability to the extent of $4670.48, and then alleging further that the plaintiff had accepted defendant's offer to sell by paying him $24,833.32, none of which has ever been repaid.

The third cause of action alleges that defendants are indebted to the plaintiff in the sum of $29,503.80 which had been "paid, let out and extended for the use of said defendants at their special instance and request" which was to be thereafter repaid, but that disregarding their promises and with intent to defraud plaintiff, have refused to return said money upon demand therefor.

The fourth count alleges that when the defendant sold the franchise to bottle and sell "Dr. Pepper" a soft drink, in the counties of Ross, Pike, Vinton, Jackson and Hocking, together with machinery, trucks, bottles, cases and equipment, the defendant, Hollon, entered into an Indemnity Agreement that any time, within five years, he would, upon plaintiff's request, purchase said business, paying plaintiff the total amount of money invested and pay outstanding obligations of said business. That on the 14th day of August, 1947, plaintiff made demand upon defendant to carry out such promises, which he refused or neglected to do. That the plaintiff invested $26,833.32 in said business and incurred liability to the extent of $2670.48.

The prayer of the petition was for $37,170.48, if judgment was returned on the first and second causes of action, or for $29,503.80 if judgment be returned either on the third or fourth causes of action.

The petition also alleges that the several causes of action are pleaded in the alternate because she is uncertain as to the precise grounds upon which she is entitled to recover.

The answer of the defendant puts in issue all of the material allegations of the plaintiff's petition and further alleges that a condition precedent to the right of plaintiff to hold a franchise to bottle and sell "Dr. Pepper" carbonated beverage, required plaintiff to secure the approval of The Dr. Pepper Company of Dallas, Texas, and that the plaintiff, with knowledge of this condition, filed a request with said company, which request was refused by said corporation in writing on July 16, 1947, and that plaintiff has not since said time acquired such approval from The Dr. Pepper Company and that the plaintiff could not become a bottler of "Dr. Pepper" without such approval.

Defendants further allege that during the months of May, June, July and August, 1947, plaintiff purchased from and through defendants equipment, supplies and merchandise designed for use in bottling and selling non-alcoholic beverages and that plaintiff purchased for re-sale, merchandise from the defendants and that plaintiff borrowed money from one Wm. B. Harrison upon promissory notes which obligations have been assigned to the defendant and that the plaintiff took possession of bottles and cases which plaintiff still retains, the total amount of all of such properties not being known to defendant and therefore asks for an accounting fixing plaintiff's liability to defendant and asks judgment therefor.

The plaintiff's reply denied all of defendant's affirmative allegations of defendant's answer and cross-petition.

Upon trial the evidence established that prior to May 10, 1947 the plaintiff negotiated with her brother, Hollon, defendant herein, who had been a bottler of "Dr. Pepper" for a long time and was then connected in "Dr. Pepper" enterprises in Portsmouth, which enterprise served Adams, Scioto, Lawrence and Gallia Counties, known as the Portsmouth Territory, and also the Chillicothe territory which included Ross, Pike, Vinton, Jackson and Hocking Counties for the purpose of acquiring a business of that character. After some other prospects had failed, the defendant, Hollon, on May 10, 1947, wrote the following letter to plaintiff at her home in Texas:

"May 10, 1947.

Mrs. Kay Womack
3112 Homan Avenue
Waco, Texas.
Dear Kay:

1. I received your card and am sorry that the plant in Mt. Vernon has been sold. However, there will be more plants

and I am sure you and Jack will be able to find one. I will see what I can find out about Bloomington and also about other locations. Will let you know when I hear of anything.

2. After we received your card, Sally, Bill Harrison and I were discussing your and Jack's disappointment and during this discussion we may have arrived at a solution, at any rate I will tell you what we talked about.

3. We have two territories here, Portsmouth and Chillicothe. The Portsmouth territory consists of the following counties, Adams, Scioto, Lawrence and Gallia, with a population of about 175,000 people. The Chillicothe territory consists of the following counties, Ross, Pike, Vinton, Jackson and Hocking, with a population of about 140,000 people.

4. Of course you know that our plant is in Portsmouth and we know that we are going to have to install a plant in Chillicothe as soon as sugar rationing is over. At present we are serving a portion of the Chillicothe territory from Portsmouth and have one truck operating there.

5. The results of our discussion are that we are offering to sell to you and Jack the Chillicothe franchise, two trucks, bottles and cases, bottles for you until you can get equipment and help you buy, overhaul and install the equipment.

6. I believe in this way you can get a good territory with 140,000 population, bottles and cases, bottling equipment and two trucks for a total investment of about $28,000.00. The territory will need one more truck and we could let you have one of the new ones we have on order when it is delivered. We also have a new body for the truck.

7. Bill said that he would be glad to help Jack on working over any equipment and installing same. Of course you know that I would help any way I can. By being this close to Portsmouth you could buy supplies with our plant and save money on crowns, caustics, tires etc. Also by being this close Bill could drive up to Chillicothe and help if you have machine trouble.

8. Kay, this territory will be under the old franchise and I do believe that you could get started in this territory with less investment than in any other. However, I would not offer it to you on a straight basis of sale. In the event you and Jack did not make a go of it someone might say that I took advantage of you and influenced you to buy some territory from me and then you lost your investment. You know all business is more or less of a gamble.

9. I will offer to sell you this territory on the basis that at any time within a five year period upon 90 days notice, I will buy the business from you and Jack for the amount of

your investment on terms of sale to be agreed upon with the following exceptions. During the period of this agreement, or five years, any money drawn by you, Jack or Lollie in excess of a total of $1800.00 per year will be deducted from your investment. As an example, suppose you have invested $25,000.00 in cash and suppose that at the end of five years you were losing money and wanted to sell the business back to me. During this five years you had not drawn anything from the business but Jack and Lollie had drawn $3600.00 per year or $1800.00 per year to be deducted from the investment. This amount for five years would make a total of $9000.00 to be deducted from your investment of $25,000.00, leaving a new minimum price of $16,000.00 to be paid you and Jack. Jack should agree with you that, in the event of a sale of this kind, that he would take at least 75% of this loss as he would have drawn all the money. By making this agreement I am protecting you from any substantial loss in the business. Of course I would expect you to carry enough insurance to protect you from loss by fire and damage suits on liability.

10. If the above meets with the approval of you, Jack and Lollie, I am sure something can be worked out in a very short time. Of course we would supply you with syrup until Jack can get a veteran's allotment.

11. Just received a wire, Mother will arrive at 12:09 A. M. tonight so we will have the pleasure of having her here for Mother's Day.

MMH/lrv                                             Lots of Love."

A few days later, Hollon heard of some bottling machinery that was for sale in Charleston, West Va. He called his sister (plaintiff herein) in Texas and told her about it and asked if she wanted to acquire the Chillicothe territory. In all of the talks about Mrs. Womack engaging in the bottling business, it was contemplated that a young man named Kendrick would join in the venture. Plaintiff tried on one or two occasions to substitute a Mr. McEver in place of Kendrick, but Hollon would not consent to such substitution. After the telephone conversation and a return call in which McEver was suggested to take the place of Kendrick, which suggestion was turned down by the defendant, Kendrick wired Hollon that the deal was on and both Womack and Kendrick came to Portsmouth arriving there on May 16, 1947. In the meantime, Hollon had purchased the bottling machinery for his sister and her partner, the option being for $9000.00. The bottle equipment was shipped to Chillicothe and Kendrick proceeded to put the proposed plant of plaintiff

and Kendrick in shape to be operated. Steps were taken to start to incorporate "The Dr. Pepper Bottling Company of Chillicothe," but in the meantime the business was carried on as a partnership in which Kendrick was designated as manager. Between May 17, and June 12, 1947, $26,292.21 was paid to the defendants for the purchase of machinery and looking toward the acquiring of the franchise for the Chillicothe territory.

In accordance with paragraph 9 of the letter of May 10, 1947, the partners entered into an Indemnity Agreement as follows:

"INDEMNITY AGREEMENT.

THIS AGREEMENT made and entered into this day of 1947, between Jack Woods Kendrick of Chillicothe, Ohio, first party Mrs. Kay Womack of Waco, Texas, second party, and Marshall M. Hollon of Portsmouth, Ohio, third party.

WITNESSETH.

WHEREAS, first party and second party have invested in the stock of THE DR. PEPPER BOTTLING COMPANY OF CHILLICOTHE, OHIO, and are its principal shareholders, and

WHEREAS, first party and second party have made loans to said corporation evidenced by negotiable promissory notes of said corporation and

WHEREAS, third party is desirous that possible losses, arising out of the operation of the business of said corporation, to first party and to second party jointly be minimized to the extent provided for herein, and

WHEREAS, third party is desirous of obtaining an option to purchase the investments of first party and of second party, jointly, in said corporation in the event that both elect to dispose of them jointly.

NOW, THEREFORE, for and in consideration of the mutual promises and covenants herein contained and the payment of One Dollar ($1.00) by each of the parties hereto to each other party hereto, the receipt and sufficiency of which consideration is hereby acknowledged, it is agreed and covenanted by the parties hereto as follows:

1. In the event that first party and second party jointly desire to dispose of all of their stock holdings in said corporation, third party shall have the option to purchase all such stock at the highest price at which first party and second party jointly have a firm binding offer to buy all such stock. The third party's option to purchase shall be for the period of forty-eight (48) hours after receipt by him of notice in writing of the price offered for all such stock, the name of the person making such offer, and the terms and

conditions of such offer. The third party, if he chooses to exercise this option, shall notify first party and second party of his election to buy, in person, by telephone, telegraph, private messenger or mail. Third party shall have the option to make payment for all such stock under the same terms and conditions of the aforesaid firm binding offer to purchase, or third party may elect to make payment for all such stock in cash within ten (10) days after notice of his election to purchase under this option.

2. Providing that first party and second party together own all of the outstanding stock of said corporation, at the option of first party and second party, jointly, third party shall purchase from first party and second party, the entire stockholdings of such parties together with all outstanding obligations of said corporation to said parties as shall be evidenced by valid and enforceable negotiable promissory notes of said corporation, secured or unsecured, at a price not less than a sum arrived at as follows:

A. The total amount of money paid by first party and second party for their respective shares in said corporation plus the balance due the first party and second party respectively on loans to the corporation as shall be evidenced by valid and enforceable negotiable promissory notes of said corporation, secured or unsecured.

LESS: All sums paid by said corporation to the first party or to the second party in excess of $150.00 per month of the drawing account of first party, all interest paid to first party or second party, and all other distributions or payments of any kind whatsoever made by the corporation to first party or to second party which payments or distributions constitute income to either of said parties reportable by either or both of such parties in filing respectively their Federal Income Tax Returns;

LESS: The total amount of liquidated, at the time of purchase by third party or unliquidated at such time but subsequently liquidated, actual capital losses or any other type of loss suffered by the corporation which could have been insured against but, either were not insured against at all, or were only partially insured against, by said corporation. The extent of a reduction of the purchase price based upon this consideration shall be computed as of the time of loss;

LESS: Conversion of capital assets to the extent distributed to the first or second party in excess of $150.00 of the drawing account of the first party and not resulting in a reduction of the principal amounts due by said corporation to either party or both on loans made to said corporation as aforesaid.

3. Upon the election of first party and second party to sell all of their stockholdings in said corporation to third party pursuant to the option hereinabove set forth in Paragraph 2 of this agreement, third party shall make payment for said stockholdings as follows:

One-third of the purchase price computed in accordance with Paragraph 2 above shall be paid by third party to first and second parties within a period of sixty (60) days following the notice of election given to third party of said first and second parties' election to sell to third party;

The balance of such purchase price shall be paid by third party within a period of one (1) year from the date of the cash payment with interest at four (4%) percent per annum upon the balance due after the cash payment;

Third party shall discharge his obligations to make payment by delivering checks, money orders or bank drafts to either party or to both parties payable to "Jack Woods Kendrick and Key Womack jointly" or make payment in any other manner agreed to by all of the parties hereto;

Third party shall have the right to withhold from payment of the total purchase price the full amount of any unliquidated claims against said corporation which could have been insured against but were not insured against at all or were not fully insured against, until such time as the actual loss upon such unliquidated claims shall have been established; upon such establishment of actual losses, third party shall pay to first and second parties as aforesaid the difference between the amount withheld and the actual loss suffered by the corporation upon such claim or claims."

At the very beginning, the defendant, Hollon, suggested that if Highland County could be added to the Chillicothe territory, that the dividing line between the Portsmouth territory and the Chillicothe territory should be State Route 124, which would add the south end of three counties first suggested as part of the Chillicothe territory to the Portsmouth territory. This change, although agreed to by Kendrick, was never determined or agreed to between Hollon and the plaintiff, as was equally true about what trucks were to be sold, their sale price and many other points of difference.

The plaintiff returned to Texas about June 12, 1947. She made application to be licensed as a bottler by the Dr. Pepper Company. This application was refused by letter dated July 16, 1947. The plaintiff, through her lawyer in Texas, at once wrote her brother that because she couldn't get a license from The Dr. Pepper Co., she would place the business on the market for sale under the Indemnity Agreement. On

August 15th, Hollon and plaintiff's lawyer in Portsmouth negotiated a sale of her interest to Hollon. It was agreed that her investment was about $18,333.00 and Kendrick's about $6500.00, although the accounting sheet showed her investment to be $13,333.32 and Kendrick's about $11,500.00. It was proposed that Hollon pay the plaintiff $6000.00 in cash and the balance of $12,000.00 in one year. The record discloses that security was demanded for the $12,000.00 payment which was refused. There was no provision in the Indemnity Agreement for securing any unpaid balance. This seems to have ended the negotiations. Thereafter the plaintiff claimed to have a firm offer dated Aug. 28, 1947 from Leon Cohen of Chillicothe, Ohio, for said business for $37,500.00, $25,000.00 in cash with balance in sixty days. The plaintiff demanded that Hollen either transfer the business to Cohen or meet the offer which he did not do. The evidence concerning this offer was excluded by the trial court.

Later the defendant made a tender of $6600.00 claiming that was the balance due the plaintiff from cash received by the defendants after deducting all expenses and charges for machinery, equipment and merchandise furnished for the operation, by the partnership of the Chillicothe Bottling business which it conducted from about May 26 to August 15th. This tender was refused. The plaintiff at all times was and remained in possession of the bottling machinery purchased for the plaintiff and her partner for which about $10,000.00 had been paid.

The jury returned a verdict for the plaintiff upon which judgment was entered in the sum of $26,833.32 from which this appeal is taken.

The errors claimed are as follows:

"1. The trial court erred in submitting construction of contract to the jury.

"2. The trial court erred in allowing counts 1 and 2 of plaintiff's third amended petition to go to the jury.

"3. The trial court erred in its charge to the jury on count three and in failing to dismiss or direct as to that count.

"4. Count 4 should have been dismissed under the undisputed facts in evidence.

"5. The court erred in admitting evidence of assignment.

"6. Throughout the trial the trial judge consistently made errors in rulings upon the admission and rejection of evidence, which errors were prejudicial to the defendants.

"7. The trial court was in error in refusing to give defendants' special findings to the jury and in refusing to compel plaintiff to elect as between defendants.

"8. The court's general charge to the jury was inadequate and prejudicially erroneous.

"9. The court erred in refusing to permit the reading of all of Northchild's depositions; and the court erred in sustaining plaintiff's objections to portions thereof."

The first two claims of error are concerned with the court's treatment of the letter of May 10, 1947. The court in its charge to the jury directed them to determine whether such letter established an offer capable of acceptance. This was done on the theory that the letter was ambiguous and it was for the jury to determine the intention of the parties.

But an examination of the letter discloses no ambiguity. It was a simple statement that if the plaintiff was interested in buying the Chillicothe territory for bottling and distributing "Dr. Pepper" the defendant would make the territory available and help in finding bottling machinery and sell bottles, cases, trucks and whatever else was necessary in such quantities or amounts as might be needed to carry on such business, which altogether would cost about $28,000.00. This was not an offer, which if accepted would result in a contract. The plaintiff's evidence supporting her first and second causes of action having relied entirely on the letter as the complete offer of the defendant did not present facts sufficient to constitute a cause of action and the court should have granted defendant's motion for judgment on the first and second causes of action. It was likewise error to submit the question of the sufficiency of the letter as an offer to contract to the jury. Defendants' first two assignments of error are therefore sustained.

The third cause of action of plaintiff's petition seems to be for money had and received. The court in explaining this cause of action said:

"In considering the third cause of action of plaintiff's petition, if you come to that, you will consider whether or not the plaintiff has proven by a preponderance of all the evidence that defendants are indebted to her in the sum of $29,503.80 paid by the plaintiff to the defendants or extended for the use of the defendants at their special instance and request in consideration of which the defendants undertook to pay her said sum of money when they should be requested to do so."

Neither the allegations of this cause of action nor the evidence would justify this part of the court's charge. This cause of action did not contain allegations sufficient to claim the right to the return of the money paid the defendants under the Indemnity Agreement, nor are there sufficient

allegations to seek a recission of the claimed agreement to sell the territory and bottling machinery, bottles, cases, trucks and other equipment, it being admitted that the plaintiff had received property of considerable value which she retained. One cannot seek the return of what has been paid, alleging fraud as the basis of the action, without tendering back what was received in the performance of the agreement. Such a tender is a condition precedent to the right to recover what one has paid, even where all the other facts are at hand to justify a recission. Here the fact that the defendant was only the agent of the plaintiff in purchasing the bottling machinery would preclude the possibility of seeking relief upon the undisputed facts of this case under the allegations of the third cause of action. The court's charge was clearly erroneous and prejudicial to the rights of the defendants and the court should have granted defendants' motion for judgment on this cause of action.

The plaintiff's fourth cause of action is founded upon paragraph two of the Indemnity Agreement (supra). As indicated above, it is the plaintiff's claim that on August 14, 1947, she called upon defendants to buy the business from her and assume to pay the outstanding obligations of The Dr. Pepper Bottling Company of Chillicothe. Aside from the fact that such corporation was never formed, the evidence shows that the demand of August 14, 1947, was that the defendants buy the undivided interest of Mrs. Womack, she claiming to have invested $18,333.00 in the then partnership. The evidence shows that defendants offered to pay plaintiff $18,000.00, $6000.00 in cash and the balance in one year. The demand of plaintiff for security for the unpaid balance seems to have been the stumbling block that concluded the effort to settle the plaintiff's claim.

But the evidence thus presented could not be considered as attempting to invoke the provisions of the Indemnity Agreement as a means of selling the partnership business to the defendants. The Indemnity Agreement specifically states that defendant, Hollon, could and under some circumstances was compelled to purchase the joint interests of Mrs. Kay Womack and Jack Woods Kendrick. Paragraph 2 which is here involved provides in part:

"Provided that the first and second party, together own all of the outstanding stock of said corporation at the option of the first party and second party jointly, third party shall purchase from first party and second party the entire holding of such parties together * * *."

The defendant under the Indemnity Agreement could not

be compelled to buy less than the whole or entire business. Considering the plaintiff's evidence on this cause of action in its most favorable light, it must be concluded that it falls far short of supporting the material allegations thereof and the court should have dismissed such cause for failure of proof.

The defendant's fifth claim of error has to do with the admission into evidence of a writing purporting to be an assignment of the interest of Kendrick in the partnership of Womack and Kendrick to Womack. The plaintiff produced a paper purporting to be an assignment and testified that she observed the said Kendrick sign the same. The paper was then offered and received in evidence over defendants' objection. The effect of such assignment was to make Womack the sole owner of the partnership assets of The Dr. Pepper Bottling Company of Chillicothe and she thereby became the proper party to bring this action. The record shows that Mr. Bannon, counsel of record for plaintiff, was called as a witness in the matter of the offer to settle plaintiff's claim for $18,000.00. He acted as the notary public on the foregoing assignment but no questions were directed to him about its execution.

In the case of **Garrett v. Hanskire et al, 53 Oh St 483,** the court sustained an objection to the introduction of the deed, the execution of which was testified to by the grantor who was not a party. The Supreme Court held this to be error and said:

"The execution of a deed or other written instrument other than a will may be proven by either one or more of the subscribing witnesses, the officer before whom the instrument was acknowledged or the party who signed and executed the same."

And at page 493 the court said:

"We think that the statutes requiring deeds to be acknowledged before an officer and permitting parties to testify have so enlarged the rules as to the manner of proving the execution of a written instrument having subscribing witnesses, as to abrogate the old rule and permit such execution to be proven alike by the grantor, the subscribing witnesses or officer before whom the acknowledgment was taken."

This case would be conclusive of the right of plaintiff to identify the assignment of Kendrick's interest in the partnership to her, were it not for the rule against self-serving declarations. The plaintiff failed to establish the execution of such instrument by the best evidence. Its admission into evidence constituted prejudicial error.

The seventh assignment of error is concerned with the

failure to grant defendant's motion to elect as to which defendant the plaintiff would proceed against for the reason that there was no evidence of joint liability and second for overruling defendant's request for special findings.

The evidence as to who the plaintiff was dealing with, whether Mr. Hollon, individually, or The Dr. Pepper Bottling Company of Portsmouth, is in great conflict. The letter of May 10th was signed by Hollon as was the Indemnity Agreement. The checks except for one for $1500.00 sent by plaintiff and her partner to be used in purchasing the business, were all made payable to the corporation. The application for the bottling license for the Chillicothe territory was signed by The Dr. Pepper Bottling Company Inc., by M. M. Hollon, Auditor. The letters from Dr. Pepper Company of Texas, extending the application for bottling license agreement from 1944 to 1947, being five in number, were all addressed to both Hollon and the Bottling Company of Portsmouth. There is no allegation of joint liability in plaintiff's third amended petition, and even if this were so, there is no evidence that would support such a claim. As to each separate cause of action the court, upon defendants' motion should have directed the plaintiff to elect as to which defendant she desired to proceed against. Failure to do so constituted error prejudicial to the rights of the defendants.

There were seven separate requests for special findings, all of which requests were refused by the court. As to all but Nos. 6 and 7, it is the opinion of this court that the ruling of the court was correct. Requests Nos. 6 and 7 are as follows:

"No. 6. You may find either for plaintiff or you may find for the defendants. If you find for plaintiff in any amount whatsoever, state on what cause or causes of action you so find and the amount."

"No. 7. If you find for plaintiff in any amount whatsoever state on what cause or causes of action you so find and the amount."

One of these two requests should have been granted. The plaintiff had pleaded in the alternative. A finding for the plaintiff on any one cause of action would have precluded a finding for the plaintiff on any other cause of action. The defendant had the right to know upon which count, if any, the jury rendered a verdict against him. Requests Nos. 6 and 7 were cumulative and therefore it was only necessary to give one. The refusal of both constituted prejudicial error.

It is also the opinion of this court that many of the errors

claimed under claims of error Nos. 6 and 9 are well taken, particularly the refusal to permit the reading of Northchild's deposition. However, we do not find such errors prejudicial to the other holding contained in this opinion.

The plaintiff throughout her case seeks to establish that she was misled by her brother and induced to enter the bottling business upon terms which were exorbitant. It is rather difficult to understand this contention by a consideration of all the evidence. In her first and second causes of action it is alleged that she received from another a firm offer to buy the partnership business for $37,500.00, $25,000.00 in cash and the balance in deferred payments. These two claims are most contradictory. However, from an examination of the issues here presented and the uncontradicted evidence in this case, it is clear that one or the other of these defendants is indebted to this plaintiff, or to the plaintiff and her former partner, in a substantial sum. The deposit with them or either of them was paid and received by all concerned, for the purpose of acquiring for the plaintiff and her partner the right to bottle and sell "Dr. Pepper" in the Chillicothe territory. Such money was deposited and received in the belief and assurance that a license would be obtainable from The Dr. Pepper Company of Texas. The money that was deposited was used and to be used to buy bottling machinery, bottles and cases, trucks and other equipment for the plaintiff and her partner, as well as for the territory or franchise which the defendant, Hollon, estimated to be worth $12,500.00. He testified as follows:

"Q. Now, Mr. Hollon, how much did you charge your sister for the franchise?

A. $12,500.00."

Some of the money deposited was actually spent for machinery and equipment. (The books show an actual expenditure for this purpose of $11,564.91.) Such property is now in the possession of plaintiff. She is now the owner thereof or she owns it in partnership with Kendrick. Upon the failure to obtain a license to sell "Dr. Pepper" by plaintiff and her partner, and their failure to tender the business to Hollon under the Indemnity Agreement, does not deprive them or either of them of the right to the return of so much of the money as was not expended upon their authority or was necessarily expended to pay for merchandise and equipment used and not returned after the brief conduct of the business by the partnership. Such failure to get a license from The Dr. Pepper Company of Texas, made it impossible to carry on the negotiations and there must therefore be an accounting

for the purpose of fixing the liability of either of the defendants for the return of the unused or unexpended deposit money.

This court will not, therefore, enter final judgment for the defendants. The judgment is reversed for the reasons herein stated and the cause is remanded for further proceedings according to law. Exceptions noted.

HURD, J, DOYLE, J, concur.